## KLEINSCHMIDT et al., Respondents, *v.* GREISER et al., Appellants.

[Submitted October 16, 1893. Decided June 25, 1894.]

EQUITY—*Verdict of jury—Judgment.*—In an equity case brought to determine the priority of water-right appropriations the court is not bound, under the provisions of section 250 of the Code of Civil Procedure, to make its decree in conformity with the verdict of the jury. (*Arnold* v. *Sinclair*, 12 Mont. 248, cited.)

WATER RIGHTS—*Abandonment.*—The abandonment by the appropriator of a water right of a ditch through which he formerly diverted the water does not constitute an abandonment of the water right, or any part thereof, where he actually used the water appropriated, but from time to time diverted the same through different ditches.

SAME—*Right of prior appropriator.*—The claim of a prior appropriator of water is not cut down by the claim of a subsequent appropriator to an amount sufficient to irrigate the land which the former actually had under cultivation at the time of the latter's appropriation, but he is entitled to so much of the water originally appropriated as was necessary to irrigate such lands as he then had which were available for the production of crops.

SAME—*Provisions of decree.*—A decree determining the rights of prior and subsequent appropriators of water should provide that each appropriator should have the amount to which he is entitled at the point where his ditch taps the creek.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION to determine priority of water rights. The cause was tried before BUCK, J., who rendered a decree for plaintiffs. Reversed.

*Shober & Rasch,* for Appellants.

I.  Appellants insist that by virtue of section 250 of the Code of Civil Procedure, which provides that, "in all cases where there are issues of both law and fact, the issues of law must be first disposed of, and in all cases issues of fact must be tried by a jury (except in actions which involve the settlement of accounts between parties), unless a jury shall be waived by the parties," they had a right to have all issues of fact tried by a jury, and the right thus given by law the courts are bound to respect.  The statute in question was incidentally brought before this court as late as 1892 in the case of *Arnold* v. *Sinclair,* 12 Mont. 248.  That the appellants had a right to a trial by jury seems hardly to admit of any doubt.  Aside from the question as to the force and effect of the finding of a jury upon an issue of fact in an equitable action, the right to such a trial is given and the parties are entitled thereto.  The statute is mandatory and leaves no discretion in the judge.  The language is peremptory that in all cases, save those specially excepted, issues of fact must be tried by a jury, unless a jury shall be waived by the parties.  It is made the duty of the court to grant a jury trial, and, in proportion to the duty of granting it, is the obligation on the judge to be governed by their verdict.  (3 Greenleaf on Evidence, § 266.)  A trial by jury being secured to all parties litigant as a matter of right in all cases where issues of fact arise, not even a demand for such a trial need be made; and, being a matter of right, the findings of the jury are conclusive.  (3 Greenleaf on Evidence, §§ 261–66, 339; Adams' Equity, *376, note; Hayne on New Trial and Appeal, § 234; *Marston* v. *Brackett,* 9 N. H. 336, 349; *Franklin* v. *Greene,* 2 Allen, 522.)  It does not seem difficult to ascertain the intention of the legislature.  The language of the statute is plain, direct, positive, and unambiguous. It states in concise and unmistakable terms that in all cases,

save in those excepted, issues of fact must be tried by a jury. Statutes should be their own interpreters, and the intention of the legislature, when properly discoverable, should always control the construction of statutes. When the language is plain, simple, direct, and without ambiguity, the act construes itself, and courts must presume the legislature intended what it plainly says. (American Rules, Potter's Dwarris on Statutes, No. 2, p. 143, No. 20, p. 146; *Smith* v. *Williams*, 2 Mont. 195; *Manton* v. *Tyler*, 4 Mont. 366; *Lane* v. *Commissioners etc.*, 6 Mont. 473; *People* v. *Utica Ins. Co.*, 15 Johns. 358; 8 Am. Dec. 243.) But the intention of the legislature becomes apparent when we examine the law in force before the adoption of section 250. Under the law of 1872, which was subsequently, in 1877, changed to its present form, parties litigant were not entitled to a jury trial in an equitable action as a matter of right. The same construction seems to have been placed on the law in force from 1867 up to the time it was changed in the year 1872. This particular section was changed a number of times since 1867, and therefore, the decisions made under the former sections can have no effect under its present form. Neither are the decisions of the supreme court of California at all applicable to the practice of this state, since the statutes are radically different. In California the "advisory theory" is firmly established, and on page 701, paragraph 234, Hayne on New Trial and Appeal, it is laid down that "the same rule has been laid down by the supreme court of the United States with reference to the Practice Act of Montana, which is similar to that of California," citing in support of that conclusion the case of *Basey* v. *Gallagher*, 20 Wall. 670. The same doctrine was enunciated by this court in the year 1885, in the case of *Mantle* v. *Noyes*, 5 Mont. 274, by Wade, C. J., basing his decision upon the same case. (*Basey* v. *Gallagher*, 20 Wall. 670.) Now, it will be perceived that, at the time the case of *Mantle* v. *Noyes*, 5 Mont. 274, was decided, and since the decision in the case of *Basey* v. *Gallagher*, 20 Wall. 670, was made, the statute in question had twice undergone material changes. The law under which the case of *Basey* v. *Gallagher*, 20 Wall. 670, was decided is found in the Code of Civil Procedure adopted in 1867, and reads as follows:

"An issue of fact shall be tried by a jury, unless a jury trial is waived or a reference be ordered as provided in this act. Where there are issues both of law and fact to the same complaint the issues of law shall be first disposed of." (Code Civ. Proc., 1867, § 155.)    In 1872 the law was changed as follows: "An issue of law shall be tried by the court, unless it be referred upon consent, as provided in chapter 8 of this title.   An issue of fact, in an action at law, shall be tried by a jury, unless a jury be waived, or a reference ordered as provided in this act." (Code Civ. Proc., 1872, § 190.)   In 1877 the law was enacted in its present form.   " In all cases issues of fact must be tried by a jury." The fact of the radical change of the law since the Basey case was determined does not seem to have been called to the attention of the court when the case of *Mantle* v. *Noyes,* 5 Mont. 274, was decided.   To hold, then, that the granting of a jury trial is still in the discretion of the judge would be in effect to hold that the law in force before the enactment of section 250 in 1877 remained unchanged, and the statute to all intents and purposes the same, which is manifestly not the case.   By section 250 the legislature intended 'to give every litigant the right to have issues of fact tried by a jury in all cases, irrespective of the nature of the action, save and except that class of cases by the statute itself specially excluded.   If that was not the intention it is altogether too unlikely that any change would have been made in the law then in force.   (Sutherland on Statutory Construction, §§ 237, 238; Code Civ. Proc., § 630; Laws of Montana, div. 5, § 204.)   But the intention of the legislature most clearly appears from the fact that certain particular cases were specially and expressly excepted from the operation of the new law.   The statute provides that in all cases, except in actions for the settlement of accounts, issues of fact must be tried by a jury.   It does not say in all cases except in equitable actions as distinguished from legal actions, but it excepts only one class of equitable actions which, in its nature, is peculiar from all others.   The expression of one thing is the exclusion of another, and consequently no further exception was intended.   (Sutherland on Statutory Construction,

§ 328.) All actions, save those specially excepted, are placed upon the same footing, and courts have no authority to create distinctions not recognized by statute. (*Gagliardo* v. *Hoberlin*, 18 Cal. 396.)

II. There was no abandonment of the water right within the meaning of the law, and no abandonment is proven by the testimony in this case. We must construe the word "abandon" according to its ordinary signification. The word "abandon" means to relinquish, desert, or forsake. There can be no abandonment without some action of the will and an intent to abandon. It would be necessary in order to prove abandonment in this case to show that Greiser gave up all claims to his water right with the intention to not use it again. (*Dodge* v. *Marden*, 7 Or. 457; *Mallett* v. *Uncle Sam G. & S. M. Co.*, 1 Nev. 202; 90 Am. Dec. 484; *Atchison* v. *Peterson*, 1 Mont. 565.) To constitute an abandonment there must be the concurrence of the intention to abandon, and the actual relinquishment of the property, so that it may be appropriated by the next comer. (2 Blackstone's Commentaries, 9; *Judson* v. *Malloy*, 40 Cal. 299.) Any one entitled to divert a quantity of water from a stream may take the same at any point of the stream, and may change the point of diversion at pleasure, if the rights of others be not injuriously affected by the change. (*Fuller* v. *Swan River etc. M. Co.*, 12 Col. 12; *Strickler* v. *City of Colorado Springs*, 16 Col. 61; 25 Am. St. Rep. 245; Angell on Watercourses, § 229; *Kidd* v. *Laird*, 15 Cal. 162; 76 Am. Dec. 472; *Junkans* v. *Bergin*, 67 Cal. 267; Gould on Waters, § 229.) Appropriators of water rights for irrigation purposes, after conducting water to the point of intended use, have a reasonable time in which to apply it to the use intended. They may add to the acreage of cultivated land from year to year, and make application of water thereto for irrigation as necessities demand, or as their abilities permit, until they have put to a beneficial use the entire amount of water at first diverted by them. (*Conant* v. *Jones*, 32 Pac. Rep. (Idaho, Feb. 8, 1893) 250; *White* v. *Todd's etc. W. Co.*, 8 Cal. 443; 68 Am. Dec. 338; *Barnes* v. *Sabron*, 10 Nev. 217; Gould on Waters, § 236.)

*Toole & Wallace,* for Respondents.

The provisions of the Code of Civil Procedure of this state do not require the court to submit all questions of fact to a jury and follow the verdict in granting or refusing an injunction in a cause in equity. Counsel for appellants have ingeniously arranged the various acts of the legislative assembly upon this subject, and, by means of erroneous premises, presented a very plausible argument in favor of their position. We shall not controvert the position taken by appellants, that if it is made the duty of a court to grant a jury trial in equity cases, that there exists a corresponding obligation to be governed by the verdict it may render. We shall concede that if the right to a jury trial is secured in such cases the findings will be conclusive until set aside in the mode provided by the statute, and that in construing a statute the court will be controlled by the language employed, when plain, certain, and unambiguous, and shall assume that the authorities cited by counsel support these propositions. It will, however, be noted that this is not the only rule of interpretation, and that statutes, like written instruments, where the intention of the lawmakers or parties controls, must be construed in the light of facts and surrounding circumstances as they existed at the time the statute was enacted or the written instrument was executed. To illustrate: If we should find that at the time of the enactment of the section of the statute relied upon the courts were possessed with both legal and equitable jurisdictions and powers, and that, under our system of jurisprudence, the two were united in the same court and that the forms of action alone were abolished, the statute will be presumed to have been enacted with reference to the condition of things, and will be construed accordingly. If, at the time of the adoption of section 23, article III, of the constitution, or the enactment of section 250 of the Code of Civil Procedure, the conscience of the chancellor was to be consulted and satisfied in equity cases, and the verdict of a jury controlled in common-law cases, we should interpret the provisions of the constitution requiring that "the right of trial by jury shall be secured to all and remain inviolate," as well as the section of

the code, which says, "in all cases issues of fact must be tried by a jury" as applying to actions at common law and nothing short of an express provision including cases in equity would justify so radical a change in our jurisprudence, by which the equitable powers of a chancellor were entirely ignored, and all equitable cases by one fell stroke of legislation converted into legal actions. In other words, nothing short of express, certain, and unambiguous language in terms making it applicable to cases in equity would justify the court in assuming that the legislative assembly intended to wipe out all distinction between law and equity, in so far as the distinct powers or functions of the courts are concerned, whether exercised by separate courts in different actions, or one and the same court in the same action. As far as the courts have gone in this direction, as we are advised, where not inhibited by constitutional provisions, is to construe similar codes to that of our own, as prescribing a general form of actions applicable to cases at law and equity blending both in one, but at the same time recognizing the distinctive features of the case as presented by the facts pleaded, and the exercise of the respective powers of the court as the case requires.

In order to render inapplicable the canon of interpretation thus announced, it is claimed that as the exception contained in section 250 refers to certain cases in equity under the maxim "*expressio unius est exclusio alterius,*" the manifest intention was to require all questions of fact in equity cases, except those enumerated, to be tried by a jury. There would certainly be much force in this position if the premises, upon which the conclusion is reached, were correct. The language of the statute is "except in actions which involve the settlement of accounts between parties." Contrary to the conclusion reached by counsel for appellants the legislative assembly, in providing for a trial by jury, were met with the embarrassments that arose at an early day in the common-law action of account, purely legal in all its characteristics, but so cumbersome in its nature as to become a proper matter to be referred. Under this view of the question the position that section 250 was intended to apply solely to actions at law, and that the exception was one rendered necessary in such actions on account

of the great number of items, *pro* and *con,* the exception tends to support the position of respondents, rather than that of appellants. Indeed, all that can be said is that actions involving the settlement of account between parties being an action at law and so regarded by the legislative assembly, and yet involving so many items of debit and credit, as to authorize a reference and dispense with a jury, the court might in its discretion so direct, upon the principle that courts of equity in some instances took cognizance of such actions for the same reasons.

Lord Ridsdale, in *O'Connor* v. *Spraigt,* 1 Schoales & L. 305, says: "The grounds on which I think this is a proper case for equity is, that the account has become so complicated that a court of law would be incompetent to examine it upon a trial at *nisi prius* with all necessary accuracy. . . . : This is a principle on which courts of equity constantly by taking cognizance of matters which, though cognizable at law, are yet so involved with a complex account that it cannot be properly taken at law." Hence, it was that the legislative assembly, by section 250, dealing with matters cognizable at law, ran upon a class of cases which, under certain circumstances, could be better determined without than with a jury, made them an exception. The principles announced will also be found in Snell's Principles of Equity, American Notes, Lawson, pages 427 to 442. Indeed, the rule is a familiar one that the settlement of mutual accounts between parties in the courts constitutes an action at law, unless they involve the transactions of agents, partners, or others sustaining a fiduciary relation. In the first instance the court would have to judge whether or not the case was one so complex as to render it proper to dispense with a jury, and our statute was made to meet the emergency.

The case involving the exception mentioned in the statute is in mining parlance a kind of *pseudo-morph,* which lies so near the contact between the granite and shales, as to partake of the nature of both, but cannot properly be classed with either, and the expert casts it with the one or the other, whichever, in his judgment, predominates in its composition. So it is with the settlement of accounts which lies on the border

line between law and equity, sometimes possessing complications more appropriate for a referee than a jury, yet wanting in those essential elements of trust, agency and the like, so as to entitle it to a fair recognition from either, it has for a long time been subjected to the discretion of the court and tried by a jury or referee, as the court may direct, and this is precisely the situation the statute intends to provide for.    Being of common-law origin, and yet possessing elements, in many instances, which would render a jury trial impracticable and embarrassing, to avoid an abatement of the action, in those jurisdictions where law and equity are not blended, many states enacted a similar statute to meet the views thus entertained by the courts. Under this condition of things the exception certainly affords no argument in favor of the position of appellant.

Again, it is claimed by appellants that as the section of the Code of Civil Procedure, applicable to trial of issues of fact, had been materially changed since the enactment of section 155, in 1867, under which it is asserted that this case should have been tried, and it is urged that as section 190, passed in 1872, contained a clause limiting the trial of issues of fact to a jury, to "an action at law," and as section 250, passed in 1877, leaves out this limitation, that the intention is obvious to make it applicable not only to actions at law, but also suits in equity.    But it will be seen that section 155, passed in 1867, had received a construction limiting the trial of issues of fact by a jury to actions at law without the insertion of the words "in an action at law."    It therefore has the same meaning with or without such limitations being expressed upon the principles of interpretation announced in the former part of this argument.    The argument is, therefore, that by returning again to substantially the same phraseology used in section 155, by the enactment of section 250, the legislative assembly intended to adopt the interpretation given it by the courts, rather than one it had never theretofore received.    Indeed, the conclusion is irresistible that the legislative assembly, knowing that the courts had already construed a section of the statute, general in its terms, to apply only to actions at law, as if though the same were therein expressed, if it had intended by the enactment of section 250 to dispense with this

limitation, it would in plain, certain, and unambiguous terms
have declared that a trial by jury should be had both in an
action at law or cause in equity.   Not having done this the
legislative assembly must have intended to adopt the interpre-
tation given to section 155, Laws of 1867, and will be presumed
to have left out the words "in actions at law," as superfluous
under the decisions of the courts of Montana, and especially
that of *Basey* v. *Gallagher*, affirmed by the supreme court of
the United States, 20 Wall. 679–81, to which we invite
special consideration.   It follows from the opinion that if sec-
tion 155 or 250, *supra*, are to be given the construction con-
tended for by appellants, they were in violation of the organic
act, and never became a law in so far as they applied to cases
in equity, were never in force in the territory, and consequently
not adopted by the constitution of the state.   This question
has been decided by this court in *Arnold* v. *Sinclair*, 12 Mont.
276, and we should have contented ourselves by a reference to
it had not the applicability and reasoning of the court been
questioned by counsel for appellants.

Per CURIAM.—The purpose of this action is to adjudicate
and determine a controversy between plaintiffs and defendants
regarding their priority of right, by appropriation, to use the
waters of Prickly Pear creek and its tributary, Cañon creek,
situate in Lewis and Clarke county, for irrigation of agricult-
ural lands adjacent thereto.

Plaintiffs allege appropriation about November 11, 1882, of
four thousand inches of water from Cañon creek, a tributary
of Prickly Pear creek, diverted by means of a dam and ditch,
whereby that quantity of said water is conveyed to the lands
of divers persons, who own said dam and ditch in common;
that such appropriation on the part of plaintiffs is prior to
defendants' appropriation of the waters of said creek; that
defendants have wrongfully interfered with and removed said
dam, thereby preventing plaintiffs' diversion of the waters
from said creek, and threaten to continue so to do, thus depriv-
ing plaintiffs of the use and enjoyment of their alleged prior
right to the use of said waters.   Wherefore, they seek judgment
establishing their alleged right as prior to that of defendants,

with permanent injunction forbidding defendants' interference therewith.

Defendants, by answer, allege appropriation and diversion of diverse quantities of the waters of Prickly Pear creek by them, respectively, or their predecessors, aggregating nineteen hundred inches, according to statutory measurement, all of which appropriations on the part of defendants are alleged as of dates several years prior to the appropriation by plaintiffs. Defendants also allege that their several appropriations were and are necessary for the irrigation of the agricultural lands owned by them, respectively. The jury sitting in the trial appear to have returned findings satisfactory to defendants, awarding them, severally, about the amount of water claimed prior to plaintiffs' appropriation; but the court modified the findings of the jury, and supplemented the same by some further findings, whereby the quantity of water found by the jury to have been appropriated by defendants, prior to the appropriation by plaintiffs, was diminished to three hundred and twenty inches, distributed among them as follows: Greiser, sixty inches by appropriation of 1871; Leedy, forty inches by appropriation of 1871, and forty inches by appropriation in 1868; Kenck, Duffy, and Coppler, jointly, one hundred and eighty inches by appropriation March 1, 1882. Following those appropriations, in order of time, the court found plaintiffs appropriated seventeen hundred and sixty inches of water of said creek, necessary for their use in the irrigation of their agricultural lands. There were some further appropriations found in favor of defendants, but of dates subsequent to the appropriation by plaintiffs. Decree was entered accordingly. Defendants appeal, insisting that the court erred in several points specified, all of which have been carefully considered in the light of the record.

The first proposition urged by appellants is that, notwithstanding this case is properly classified as in the nature of an action in equity, the court is bound, by virtue of the peculiar provisions of section 250 of the Code of Civil Procedure, to make its decree in conformity with the verdict of the jury. This proposition has been several times argued to this court, and given due consideration, resulting on each occasion in the

conclusion, remarked in *Arnold* v. *Sinclair*, 12 Mont. 248, that it will not be presumed, from any devious or uncertain language, that the legislature undertook to prune away one of the most distinctive and important jurisdictional functions of the equity court; and when a statute is found clearly expressing that intention, it will be time enough to inquire as to whether the legislature possessed power to that end.

Passing to a consideration of the points of error specified in relation to the findings of fact, we find that the record, which purports to contain a transcript of all the evidence introduced, does not disclose evidence sufficient to support the finding by the court that defendant Greiser abandoned, in the year 1877, all but sixty inches of his original appropriation of the waters of said creek. According to the evidence shown by the record defendant Greiser constantly used the waters appropriated for his ranch, but from time to time diverted the same through different ditches, and in 1877 he abandoned an older ditch formerly used for the same purpose. This does not constitute abandonment of his water right, or any part thereof, nor does any evidence in the record support such finding. Nor is there evidence in the record sufficient to warrant the finding by the court to the effect that defendants Duffy and Coppler did not acquire an interest in the Tierney ditch until May, 1885. The undisputed evidence, as disclosed by the record, shows that they acquired an interest in said Tierney ditch in June, 1882, and that testimony is corroborated by the joint notice of appropriation of the waters of said creek by Tierney, Duffy, and Coppler, introduced in evidence, which bears date May 25, 1882, and declares their appropriation as of that date. Nor is there evidence in the record sufficient to warrant the finding that, after Duffy and Coppler acquired interests in said Tierney ditch, they enlarged the same to a capacity sufficient to divert the water by them appropriated. The testimony of witnesses on this point is emphatically to the contrary effect, except that of witness Ford, who, under contract, for the owners, continued the excavation of said ditch after Duffy and Coppler acquired interests therein. In his testimony he describes his work upon said ditch, and says that he enlarged or widened the excavation of a portion of the ditch, where the work of

Tierney in the excavation thereof was left off; that Tierney directed Ford to widen the ditch in that part, explaining that the last of his excavation was done in the winter, and was not made of sufficient width at that part. But Ford distinctly testifies that it was only the portion of the excavation towards the end, where Tierney left off, that he enlarged. His testimony, under such explanation, becomes consistent with that of other witnesses on this point, all of which is insufficient to support the finding that the part of said ditch already excavated by Tierney was enlarged after Duffy and Coppler acquired interests therein. The effect of the finding by the court on this point would place the appropriation of Duffy and Coppler as of May, 1883, subsequent to that of plaintiffs.

There is another finding by the court to the effect that only a portion of certain ranches owned by defendants were available for irrigation, and apparently upon that theory the quantity of water allotted to them by the findings of the court was very considerably diminished from the amount appropriated and diverted through their ditches, and claimed to be necessary to irrigate their lands. It is always proper to inquire into the question of the necessity and ability to use the quantity of water appropriated and diverted. If it should appear from proper evidence that a portion of defendants' lands are so situate that the water claimed by such defendants could not be diverted thereto, or that the land is of such character or condition as that crops of grass, grain, or vegetables could not be grown thereon with the aid of irrigation, it would seem proper to take such conditions into consideration, in determining the amount of water to which such defendants were entitled. But the evidence in this case does not warrant the finding that only the portions of the lands owned by defendants, as designated by the court, were "available for irrigation." It does not appear from the evidence that there was contention by the litigants that certain portions of the ranches of defendants were of such character, or so situate, as not to be available for irrigation.

There was much evidence introduced on the question as to the quantity of water necessary, per acre, to irrigate certain lands owned by defendants, and how the quantity varied when

applied to different characters of soil.   There was also considerable evidence introduced on the inquiry as to how much land defendants had under cultivation at the date of plaintiff's appropriation out of the waters of said creek, in the fall of 1882; and some findings by the court tend to indicate that it proceeded, in determining the quantity of water to which defendants were entitled prior to plaintiffs' appropriation, on the theory that defendants were entitled to hold, prior to plaintiffs' appropriation, only a sufficient quantity to irrigate the lands which defendants actually had under cultivation at the date plaintiffs initiated their appropriation.   It is not shown with clearness and certainty that the court proceeded on such theory, but certain findings by the court, stating particularly that the defendants named had under cultivation at the date of plaintiffs' appropriation a stated acreage of land, tend to indicate that the court proceeded on the theory that defendants' appropriation of water prior to plaintiffs' should be cut down to a quantity sufficient to irrigate the land of defendants actually cultivated at that time.   Such theory, if followed, is, we think, without doubt, erroneous.   Thereby a prior appropriator of water would be cut down to the quantity necessary to irrigate the land he actually had under cultivation when the subsequent appropriation was made, although the first appropriator's land was all available for production of crops by aid of irrigation, but, at the time of making the appropriation of water necessary for its irrigation, he had not subdued all of it to the plow.   The priority under such rule would depend largely upon the time appropriators brought their lands under cultivation, and not upon the priority of appropriation and diversion of the water necessary to irrigate the land owned by the appropriator, as the law provides.

A further objection urged by appellants is that the decree maintaining the dam against defendants' interference would, in certain seasons, in effect, withhold all the water of said creek from appellants—even that awarded them by the decree prior to the appropriation of plaintiffs.   Respondents answer this objection by admitting that the intention of the decree was to have the dam so constructed and operated as to allow the volume of water awarded defendants prior to the right of

plaintiffs to pass it at all times, if so much water flowed in the creek, and concede that if the decree is not thus conditioned it may be modified to that effect.

Appellants also urge that the decree does not provide at what point they may take the water awarded to them in several amounts. It appears to be agreed that the appropriator of water should have the amount to which he is entitled at the place where his ditch taps the creek, and appellants concede that if the decree in this case does not provide that respondents shall allow sufficient water to flow past their dam to give the appellants, at the points where their several ditches tap said creek, the amount of water awarded them, the decree may be modified to so provide. In our opinion that would be a proper provision, and the decree should be conditioned accordingly.

For the reasons above set forth the judgment entered ought to be reversed, and the case remanded to the trial court for revised findings in conformity with the views herein expressed, upon the evidence already before the court, supplemented by such other evidence as may be necessary to ascertain and determine the respective rights involved. The order of this court will be enter accordingly.

*Reversed.*

HARWOOD and DE WITT, JJ., concur.

